The next case is Carnley v. Ford. Mr. Poulton is here for the appellant. Mr. Finley for the appellee. Mr. Poulton, you may begin when you're ready. Mr. Finley, you may begin. Good morning, your honors. May it please the court, counsel. My name is Tom Poulton. I am here on behalf of Bay County Sheriff Tommy Ford. We ask that the court reverse the judgment in this case and do one of two things. Either with instructions that judgment should be entered in favor of Sheriff Ford as a matter of law or for a new trial. Handling those issues in order. The two bases for the argument that the court should reverse for judgment in favor of the sheriff are that assuming that Warden Anglin, who ran the jail, was the final policymaker for the sheriff, the evidence was insufficient to demonstrate that he had been placed on notice of a subjective risk of serious harm by Corrections Officer Reyes. This came primarily or actually entirely from the former Correction Officer Bailey, who claimed to have a 22nd conversation with the warden in which he was. Well, his trial testimony was ambivalent at best. Can I can I can I just stop you briefly to test the assumption upon which you're predicating the deliberate indifference argument you're about to make that he is the final policymaker. So do I have it right that in our deliberate indifference, or really Monell sort of jurisprudence generally, the question whether someone is a policymaker is fundamentally an issue of state law. Look through this. So I read the briefs on both sides. I can't find a single state law citation in any brief. So, I mean, I'm left totally at sea trying to figure out whether this guy's a policymaker. Everybody is sort of making common sense arguments about why he is or isn't. But I haven't seen a lick of state law explaining to me why there is. Well, I'm not sure that there is anything that gets specifically into the issue of whether or not a warden of a jail that is run by the sheriff is necessarily the final policymaker for the sheriff. And in fact, well, there might not be a statute that says, by the way, the warden of a jail that's run by the sheriff is a policymaker or he isn't. But, I mean, don't we always in these cases look through to some indicator of state from state law? I'm not aware of any. You mean you're not aware that we have ever done that or you're not aware of any indication in state law that would help us? I'm not aware of any indication in state law one way or the other. So we just kind of make it up. I think as a matter of practice, when you look at the cases of the court discussing who is the final policymaker, you get into whether that person had reviewable authority and specifically in the area which is being attacked, which doesn't always come from a prior case or a prior statute. It comes from the actual operation of the facility. I mean, in Florida, the jails are not necessarily run by the sheriffs. The counties have the authority to have the sheriff do that. So that would be like source of state law number one. That's a principle like, you know, here's how Florida law works. Sometimes yes, sometimes no. But that would make the sheriff the final policymaker. And I don't think anybody would argue differently that the sheriff would be the final policymaker. The question is whether the warden of the jail is also a final policymaker. And then we have the issue in the case as to whether or not there was evidence. Using that practice approach. But in any event, you conceded the issue at the trial. You conceded it before the judge on summary judgment. In fact, I'm reading from the judge's order. He says, asked at oral argument on the sheriff's summary judgment motion whether the warden is a person whose edX or X could fairly be said to represent official policy. The sheriff's attorney answered succinctly. Yes, this was a clear concession on this point. And it wasn't listed. It wasn't an issue at the trial. Well, your honor, if that were the only back and forth on the issue, I would agree with you. But it wasn't. There were three points after that where the district court said the issue still remained. Including in the written order on summary judgment. The district court said whether he is the final policymaker. Using that language that you just cited still remained to be tried. He said it verbally to the parties. And then at the close of the evidence, he indicated because the plaintiff had asked that a separate person, a chief Rigsby, be identified as a final policymaker. And the court declined to do that and said, based on the evidence, I'm finding that warden England is. Well, how do we, on summary judgment, how do we get around our prior decision in Lynn versus UPS where we said this court will not review the pre-trial denial of a motion for summary judgment after a full trial and judgment on the merits? That helps, I think, the defense because there's no evidence at the trial establishing that warden England is the final policymaker. The evidence is to the contrary. At best, what we have here is a very confused situation. And Judge Hinkle also said in his order that because the case proceeded on the assumption that he was the final policymaker, the plaintiff didn't put any evidence on. So you have two choices if you agree that there's a question here. Choice one would be to find that the evidence at trial did not establish that he was the final policymaker. That's an issue of law that the court could decide. Option two is to decide that if the plaintiff was, by virtue of the sequence of events, didn't appreciate that they needed to put on evidence of that to have a new trial, at least on the issue of whether he's the final policymaker. We couldn't agree that you were entitled to a motion for new trial without a finding that there was an abuse of discretion, though, right? That would be the standard of review. Yes, but again, if that statement were standing by itself, my position would be much weaker. But there are three other points at which, including in writing, about a week and a half after that hearing where the court said that was still an issue. All right. I guess the concern that I have is you can't keep this issue in your back pocket to see if you prevail at trial. And then after trial, raise it and blindside the judge that way. You have to make that argument before the case goes to the jury. Well, that's why in the brief we indicate that the court doesn't have to really resolve that issue here because of the fact that our position is that the evidence coming from Bailey is insufficient to meet the high threshold to show deliberate indifference. They have to show that Anglin, assuming he's the final policymaker, had subjective knowledge of a risk of serious harm, disregarded that risk by more than gross negligence. And if you read Bailey's testimony, he is entirely inconsistent about exactly what he said. At the end, he says, I don't know what inference. He says he's asked, you know what? The warden took away from that. He says, no, I can't. They have to show that the warden, if he's the final policymaker, actually drew the inference that there was a risk of harm to the plaintiffs from riots. And in that respect, I want to emphasize one of our arguments on the trial issue is that the defense was not allowed to point out that Mr. Bailey, who was the only source of the only report on this, was a then client of Plaintiff's counsel. When did you find that out? I don't know exactly when that was found out. It is discussed pretrial. So at one point in time, you wanted the judge to prohibit the plaintiff from calling him as a witness because he had not been disclosed, I think, in the disclosures required by the rules. But I'm trying to say, when did you find that out? Your Honor, I don't know when exactly that was found out. But if you look at the transcript, it is discussed pretrial because the judge says you're not allowed to talk about the fact. 30 days before trial, 60 days. It has to be within that because the plaintiffs did not disclose him in Rule 26 or in interrogatory answers. And the first time he came on the scene was when the plaintiff filed a response to the summary judgment motion and offered his affidavit. And you, the judge, I think Judge Hankel asked if you would, you know, we'll let you take his deposition. You took his deposition, I suppose? Defense counsel did, yes, Your Honor. And did you ask the question, when I say you, I'm talking about your client. Did you ask the question about representation by the Plaintiff's counsel? I don't know. I don't know. I do know that Plaintiff's counsel talked about it in one of the pretrial hearings, that he was a client of counsel's. In fact, that's how it came up. He was a then-existing client, and because of the circumstances of the case, he mentioned it to Mr. Bailey, who said, oh, I don't know. How would you have used, I recall the testimony, but, or the record. How would you have used that, you, again, your client, in the case if you were permitted to ask the question in front of the jury, doesn't Plaintiff's counsel represent you or represented you in a criminal proceeding? And civil and a criminal or just criminal? It was criminal. Think about this. At the end of the day, if the entire case for notice comes down to what Bailey says I told Englund, and Englund says that's not what he told me. And that's what you say happened. Right, and there's credibility contests between those two men. That's where the entire million-dollar judgment, you know, that's the fulcrum of it, right? We're not allowed to point out bias, potential bias anyway, on the part of Bailey, that he would have an incentive. You were allowed to point out that Bailey assisted Plaintiff's counsel in getting witnesses and things like that. I think the only testimony, yes, but I think that the, it was interesting the way that was spun. He said that he had contacted Reyes and said it would be a good idea to contact Plaintiff's counsel because he hadn't answered, presumably, or just to be prepared for trial, what have you. But the point is that, I mean, when you're, at the end of the day, when we're weighing, you know, our jury's weighing their testimony, I don't think that anybody could say that it wouldn't affect the rights of the defendant to point out that the witness for the, the witness for the plaintiff on this is also a client of counsel's. I could not find a case directly on that issue. I mean, there are, you know, there are many that talk about bias always being something that can be considered, but I could not find one specifically on that issue. Also, on the new trial issue, I wanted to just point out several things. First of all, there was repeated criticism of the quality of the post-incident investigation, the Jenks investigation. Plaintiff's counsel, even though the district court said it's irrelevant, criticized the agency for having an internal person come in and investigate what happened, which, of course, didn't matter because the man admitted it and was fired immediately. But they were allowed to say, weren't you worried about the optics of having the agency send in its own investigator? There was an objection to it. It was sustained. The district court, between day one and day two, reminded them the quality of the investigation is not at issue. But even on the second day, they continued to hammer home 20 questions, roughly, of Jenks, investigator Jenks, the second day, where they emphasized the lack of quality of the investigation and the determination of whether it was consensual or forced, and just this, you know, wave of criticism of the agency for its post-incident investigation, which the judge had ruled was irrelevant. And there was objection to that. There was also a lot of evidence in the case about speculation about what other people knew. The plaintiffs themselves testified that other guards must have known it because they must have seen us walking back and forth on video. And so what you've got is the case is supposed to be about what Warden England knew, and instead we're talking about what other unidentified corrections deputies might have known about other deputies sometimes. And you're telling us there were objections to all those questions? And not to that specific set of questions, no. Then why would it be fair to hold that ruling against a district judge that was never confronted with the opportunity to rule on? Well, actually, I mean, I think that the judge said many times what the case was supposed to be about. The lack of objection, though, you get to whether or not it was plain error. And if you look through that transcript, it's only a day-and-a-half trial. It's just over and over again. And especially when you combine that with the fact that we're talking about these ancillary issues about post-incident investigations, just the entirety of it, we would submit resulted in an unfair trial. Thank you. Thank you. Mr. Bolton, we'll hear from Mr. Finley. May it please the Court. The appellant in this case has stated repeatedly in this oral argument here today that the only witness was Sergeant Bailey. Sergeant Bailey was an employee of the Sheriff's Office. But in addition to his testimony, there was testimony from the admitted rapist, Mr. Reyes, that the warden, Warden Anglin, had several months prior to the rapes of our clients, had told Mr. Reyes that he was aware of sexual misconduct by Reyes. So the case is not entirely dependent just on Mr. Bailey. The district court did the proper thing in allowing Mr. Bailey to testify. There was the opportunity for the deposition, and they could have asked him any question they wanted about bias. So, counsel, the person who admittedly had sexual relations with an individual that was within his custody and control testified in front of the jury. Could the jury, you think, maybe not believe him? That could be, but that's a question for the jury. It is a question for the jury. Wouldn't it also be a question for the jury as to whether or not Mr. Bailey was telling the truth and was not acting strictly on his, I guess, good feelings towards Plains Counsel? Of course. And that's what our argument is, is that this case properly with the jury, Judge Hinkle decided on the following. But the jury had no idea, did they, that Mr. Bailey was represented by Plains Counsel in a criminal proceeding? Well, first of all, Did they or did they not? There was no evidence in the record of that. Let me read exactly what they raised. They said, with respect to whether, they said Mr. Bailey, quote, may be working for Mr. Webster and Mr. Baptiste or biased. They didn't provide any evidence. They made no proffer of any fact that he was. All right, hang on. In pre-trial discussions, the court, did the court not make it clear with the plaintiffs urging that the defense could not go into the fact that Mr. Bailey was represented in a criminal matter by Plains Counsel? Respectfully, I would say no. Because after the defense counsel said that Bailey may be working for the plaintiffs. You're talking about a trial there, right? This is prior to trial. And then the response by Judge Hinkle is, don't bring up the fact that he's represented by these lawyers unless you raise it with me. And I think that's a common ruling for a trial judge with a motion in limine. He has to say, well, raise it with me at the time and I'll be able to make a decision. So Judge Hinkle didn't say you're precluded from ever raising that. He said don't bring up the fact that he's represented by these lawyers unless you raise it with me. Depending on what he says about some of this, if it turns out he denies any contact with any witnesses or has any interest in the case, he's just a witness like any other witness. Then I may let you say, are you represented by Mr. Webster in a different matter? Defense counsel, I understand. All right, read that again slowly. Okay. This is that. What the judge was saying. What the judge was saying. Because I aside me from finding it in my notes. Okay. It's a doc. One hundred page forty six. And the court says don't bring up the fact that he's represented by these lawyers unless you raise it with me. He's giving him an opportunity. Keep going. Keep going. Yes. Depending on what he says about some of this, if it turns out he denies any contact with any witnesses or has any interest in the case, he's just a witness like any other witness. Then I may let you say, are you represented by Mr. Webster in a different matter? It wasn't the judge saying there that if he denied going and working to get these witnesses lined up, if he denied that, then I would let you get into the fact that Plaintiff's counsel represented him in the criminal proceeding. Isn't that the only fair reading of what the judge said? I think that's fair. Okay. Well, did he deny that he worked for Plaintiff's counsel in getting witnesses at any point? I don't think there's any trial testimony of that. All we have here is that we think he may be biased and the judge says if that comes up, we will discuss it. So if defense asked the question, did you assist Plaintiff's counsel in getting witnesses and he says yes, then a fair reading of what you just said the district judge said was that I'm not going to allow you to get into the fact that he was represented in a criminal matter by you. Isn't that correct? I would say no. I would say that the judge left it open. He was at a pretrial conference, and it depended on what he said. And I think that's a normal ruling for a trial court judge to do in a motion in limine. And then just so I'm clear on the record, what happened at trial about this? Nothing. They never raised it. All right. So I'm having to, like, recall my prior life as a private practicing lawyer. But I thought the general rule was that when you get some kind of squishy motion in limine like this, that you've got to re-raise the objection at trial in order to preserve it. That's correct, and they did not. They never raised the issue again after this. They never made a proffer. They didn't make any objection contemporaneously to any testimony of Bailey. And that includes all the other issues that they're raising about Mr. Bailey. Never was there an objection to that. And the trial judge has complete authority to make rulings at trial, but he needed to bring it up because there was nothing definitive. There was no proffer in the first place, even in the pretrial discussion. And I think Judge Hinkle very clearly said, depends on what he says, I may let you get into that. And so I think he did exactly what he should do. So as I mentioned previously, he continues to say the witness was Sergeant Bailey. As I pointed out, there was a conversation between Warden Anglin and Mr. Corporal Reyes directly several months before our clients were raped that says, where the warden says, you're suspected of having committed some sexual misconduct. So we have that, and we have two allegations of two different instances from Sergeant Bailey. And this is not like it's an inmate who's just saying, hey, I was raped. This is coming from Sergeant Bailey twice and Reyes and in the discussion between Anglin and Reyes as well. Now, the defense has also conceded that. Was there also testimony from Bailey that recounted sexual misconduct by officers at the jail unrelated to Reyes? By Bailey? There was some evidence in the record of a lieutenant. By some other officers. There was a report that was admitted without objection that was the Jinx investigation where he investigated whether this occurred. And there were conversations with others about it. There were comments that you could provide, that would provide context, such as one of the plaintiffs herself saying that it was obvious that anyone could see that this was going on. And Mr. Reyes himself, who said that he was sure that other people saw him go into the closet room with the various inmates. I guess. But what I'm asking is, was there also some evidence admitted at the trial that there may have been sexual misconduct taking place at the jail not related to Reyes? Lieutenant Swan was reported to have females come into his office late at night to clean the floors. And that was investigated as a possible episode of sexual misconduct. And I think it laid it was there was a non hearsay purpose to that, though, as well, because one of the plaintiffs that was asked, why didn't you go tell Lieutenant Swan? And so there's a there's a non hearsay purpose to introducing the evidence about Lieutenant Swan to say, do you really think that someone like that was going to help her? The defense has conceded several points in this case, and one of them is that if Bailey testifies, it's a classic jury question. Judge Hinkle directly said this would be a classic jury question to the defense at the argument on summary judgment. And the defense attorney said, I agree that it creates a dispute of fact. In addition, moving to the deliberate indifference, Judge Hinkle asked if that testimony, meaning Bailey's testimony, is here and properly considered. Isn't it so that the jury should find that the warden was deliberately indifferent? And the defense attorney said, I do agree with that, indicating that this is a jury question. And then the court finally, using the language of the Mandel case and the Monell case on the question of final policymaker, said to the defense attorney at summary judgment hearing. And the warden is a person whose edicts or acts could fairly be said to represent official policy. Defense attorney said yes. So that issue was conceded. There was never an objection to a single jury instruction in this case. The issue was not addressed by the defense as an issue in the pretrial order. That by itself, I agree with Your Honor, that is sufficient right there to preclude it as being an argument on appeal. So what do you say, though, to my question about looking through the state law and there being essentially an inkblot here? I can see in the cases where you get that. I think that's a statement the courts have made, and it's a correct statement that it is a question of law. And I've seen that, including the phrase state law. But I can say also that there are a lot of cases out there, including not the Monell case, but the Mandel case, where it's more of a facts and circumstances thing. I mean, I guess I'm looking at not only our case law, but the United States Supreme Court. Our understanding of the actual function of a government official in a particular area will necessarily be dependent on the definition of the official's function under the relevant state law. State and local positive law, as well as custom and usage, have the force of law. We begin by reiterating that the identification of policymaking officials is a question of state law. And I just – there isn't any state law here, so far as I can tell, at least that I've been shown. Well, that's probably because the issue was conceded. As I mentioned before trial, we went into that, and Judge Hinkle asked the question, and defense attorneys said yes. And when the jury instructions came out, there was no objection to the jury instructions, which went through the final policymaker. So it was a – it was almost like a stipulation. In addition, though, I can point out to you that there's an 11th Circuit case, Mandel, where even a physician's assistant, a PA who's responsible for the inmates that were working in the field, was the final policymaker on that type of issue. So I see it as more of a facts and circumstances case. I do understand that there are statements in the law about it's a question of state law. I think the important thing here is that it was a question of law and that it was conceded. There was a stipulation. So why would you go through all of the confusion of that for the jury if it's already been conceded? Do you agree just descriptively, and maybe you haven't thought about it because you assume the issue was conceded, but do you agree with your friend on the other side that there is essentially no state law to look to? I don't recall anything in the record where there was a statute about wardens in the state of Florida system. I think it's just a matter of can – but the way the Supreme Court has also said it, even in Mandel, is the real question is do the actions and edicts of that person fairly represent that organization? And I think you're looking at the warden of a prison, and you're looking at supervision of guards who potentially are abusing inmates. That's got to be within the warden's policymaking function. Now let me ask you this about the concession point because you said that even as late as summary judgment, the other side was effectively conceding this. But doesn't the district court's order on summary judgment say among the issues to be tried will be whether these acts and edicts are those of an official policymaker or whatever? I mean the district court didn't seem to think it would be conceded. They're sort of teeing it up for trial. Well, this – the same Judge Hinkle, as you know, is an excellent judge. He had the concession in his hand, but the jury instructions weren't done until the conclusion of the trial. So I think that he was within his power to look at the record as it was and conclude that he was the final policymaker. With respect to the other items that they've argued on, evidentiary issues, we've been through the record very carefully, and there was just a complete failure to object to all of these other things. The main exhibit about other conduct came in through exhibit number one, which was Jink's investigation of this incident. It had comments from other people. The defense attorney said, we want the whole thing in. And then the same thing happened with respect to the Swan investigation. There was no objection. And not only was there no objection when these things were thoroughly addressed by Judge Hinkle in pretrial conferences, but they were not – there was no contemporaneous objection during the trial of this case. And so we believe that all of the issues that they have raised have been waived, and not only were they waived, we believe that Judge Hinkle made the right conclusions down the line. And it ultimately was a jury question, and it's not our job here today to question the jury's determination of Bailey's credibility, Reyes's credibility, and the other's credibility. If there are any other questions, I'll be happy to answer. Thank you, Mr. Finley. Thank you. And Mr. Bolton, you have reserved some time. Yes, Your Honor, thank you. I'd like to address several of the points brought up by plaintiff's counsel. First, Your Honor, dealing with the issue of state law and whether or not a warden within a county jail system is a final policymaker, even using the standard that he discussed, frankly, that we were also talking about, the decision of the final policymaker must be unreviewable. The only evidence at trial was that the decision to launch an investigation, for example, in this case by CID, which is a criminal investigation division, comes from the sheriff. In fact, Warden Englund testified that when he learned of this, he called the sheriff, and then either he or the sheriff then called CID. Now, he did fire Reyes, but that alone, just the label of that, meaning Englund, Englund fired Reyes after Reyes confessed to having sex with a different woman, a different female inmate. That doesn't mean that his decision is not unreviewable. So, really, the bottom line point that I wanted to make on this issue of final policymaker is that it was extremely unclear. At best, it was unclear, and really the choice, if the court finds there is an issue there, the choice is, do you find that the plaintiff failed to meet their burden to show he was a final policymaker, or do you have a new trial? Because the plaintiff believed that the judge had ruled that way, notwithstanding the three other pronouncements to the contrary. Can you help me with my question about motions in limine and objections at trial? I'm kind of shooting from the hip here, but I thought I recalled, again, from my practice life, that if you got anything other than what I think courts have called an unequivocal motion in limine ruling, then you really had to re-raise the objection, whether that's an objection to the admission or a proffer with respect to exclusion at trial to preserve the error. Right, and this gets to, I think, Judge Kugler's question about Bailey having worked for plaintiff's, I'm sorry, having been a client of plaintiff's counsel. I must respectfully disagree with plaintiff's counsel. I believe the record does show that during the trial, Bailey testified that he had contacted Reyes for plaintiff's counsel, which was the trigger to then, because he says that under the judge's ruling, as Judge Kugler pointed out, you can't go into the fact that he is also represented. But so your understanding of the law is that you don't have an obligation at that point to say, Judge, for the record, we need to make a proffer here. Well, not if the judge in advance says, this is the condition under which you can bring this in, and then that condition doesn't occur, which is, had Bailey said, no, I haven't done anything to help them out, then that might have opened the door completely. We might have revisited the issue. But the judge ahead of trial says, this is the trigger, and it's not met, because he admitted that he did contact Reyes. Plaintiff's counsel also points out that Reyes testified is not the only evidence on notice. Well, Bailey's the only evidence on notice. Reyes says that later that Anglin expressed to him some concern about whether he was engaged in misconduct with another inmate. However, in this court, in Doe v. Georgia Department of Corrections, cited in the brief, held that under very similar circumstances, a single report of sexual misconduct which is denied is not at the level that puts, even if Anglin is the final policymaker, that puts him on notice of a serious risk of harm to other inmates in the future. I think we have your argument, Mr. Bolton. Thank you. Thank you. Court is adjourned. All rise.